IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | CRIMINAL ACTION NO. 17-549-1 |
| | : | |
| PETER GOODCHILD | : | |
| | : | |

**MEMORANDUM**

**McHUGH, J.**                                                                                           **NOVEMBER 14, 2018**

This case involves a difficult issue concerning the relationship between civil and criminal forfeiture on which there is no binding Third Circuit precedent. Specifically, the questions raised are whether, following the dismissal of its civil forfeiture action as untimely, the United States may pursue criminal forfeiture at all and, if it may, whether the United States also has a right to maintain custody of property seized pursuant to a civil seizure warrant before the commencement of the civil action. After careful consideration of the parties' submissions and the relevant statutory provisions, I conclude that the dismissal of the civil forfeiture action does not entirely bar the Government from pursuing criminal forfeiture. The applicable statute does, however, require that the Government immediately surrender the seized funds, providing no right to continued possession of the property through trial.

**I.     Background**

In the current criminal case, Defendant Peter Goodchild stands accused of, among other charges, wire fraud and aggravated identity theft pursuant to an indictment returned on October 5, 2017. The same alleged conduct provided the basis for an earlier civil seizure warrant issued by a United States Magistrate Judge. Agents of the Federal Bureau of Investigation (FBI) executed that warrant on February 8, 2017 and seized approximately $67,600.

After receiving notice from the FBI of the seizure and the Government's intent to pursue administrative forfeiture, Mr. Goodchild timely filed a claim pursuant to 18 U.S.C. § 983(a)(2) (2012) on May 4, 2017. Ninety-one days later, the Government filed a motion for extension of time within which to file a complaint, which Judge Pratter granted. *In re Eight Thousand, Five Hundred Eight Dollars and Sixty-Three Cents ($8,508.63) from PNC Bank Account x1775 et al.*, No. 17-mc-00136, ECF No. 3 (E.D. Pa. Aug. 14, 2017). Within the time provided by that extension, the Government proceeded to file a complaint, which Goodchild moved to dismiss. Goodchild argued that the Government's motion to extend was itself untimely, rendering the complaint untimely as well. Judge Pratter agreed and dismissed the civil forfeiture case as time-barred in July 2018. *In re Eight Thousand, Five Hundred Eight Dollars and Sixty-Three Cents ($8,508.63) from PNC Bank Account X1775 et al.*, No. 2:17-mc-00136, 2018 WL 3427635, at *1, *9 (E.D. Pa. July 16, 2018). Judge Pratter also denied the Government's motion to stay the civil forfeiture case pending resolution of the criminal proceedings. *United States v. Eight Thousand, Five Hundred Eight Dollars and Sixty-Three Cents ($8,508.63) from PNC Bank Account x1775 et al.*, No. 17-cv-04360, ECF No. 10 (E.D. Pa. July 16, 2018). The Government appealed Judge Pratter's rulings to the Third Circuit but did not ask the Court of Appeals for any interim or emergency relief. *Id.*, ECF No. 11. The Government has since dropped its appeal, apparently conceding that the civil forfeiture action was in fact time-barred. *See id.*, ECF No. 13.

Meanwhile, on October 5, 2017, some eight months after seizure and five months after Defendant Goodchild filed his claim, a Grand Jury in the Eastern District returned an indictment that included a notice of forfeiture, alleging that Defendant's interest in the seized funds was subject to forfeiture as property involved in his unlawful conduct. *See* Indictment, ECF No. 1.

The Government filed this Motion in the criminal case, shortly after Judge Pratter dismissed the civil forfeiture action, seeking permission to maintain custody of the disputed funds.

## II. Discussion

As a general rule, the Government has options as to how to pursue forfeiture and can do so through a civil proceeding, a criminal proceeding, or both. *See* 18 U.S.C. §§ 981, 982, 983 (2012). Precisely when and how the Government may exercise these options is largely laid out in the Civil Asset Forfeiture Reform Act of 2000 (CAFRA). Before CAFRA's enactment, administrative forfeitures were governed primarily by customs law—in particular the Tariff Act of 1930, 19 U.S.C. § 1602, *et seq.*—and civil judicial proceedings were governed in part by the same body of law and by the Supplemental Rules for Certain Admiralty and Maritime Claims, substantive civil forfeiture statutes, and provisions in Chapters 85 and 161 of Title 28. Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. OF LEGIS. 97, 101-02 (2001). CAFRA amended some provisions of prior law but did not amend or repeal all of it. For practical purposes, it created three new statutory provisions, 18 U.S.C. §§ 983 and 985 and 28 U.S.C. § 2465(b), which overrode older, inconsistent provisions of the law but otherwise left consistent provisions intact. *Id.* at 102.

Most significant for purposes of this case is 18 U.S.C. § 983, which imposes important deadlines on the forfeiture process. Under § 983(a)(1), the Government has 60 days following the seizure of property in a nonjudicial civil forfeiture proceeding—like the seizure performed by the FBI in this case—to give the required notice to parties with an interest in the property.[1]

---

[1] The underlying civil forfeiture statute governs whether notice is required. Section 983(a)(1)(A)(i) imposes the 60-day deadline "in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties." 18 U.S.C. § 983(a)(1)(A)(i). Section 981(a) provides the substantive authority for the Government's seizure pursuant to the civil seizure warrant in this case.

Where no interested party contests the forfeiture, the Government may retain the property without any judicial proceeding. If, however, a person claiming an interest in the property files a claim within 35 days of the date the notice letter is mailed, as permitted under § 983(a)(2), the Government must act in order to retain possession of the property. Specifically, the statute requires that, within 90 days, the Government either file a civil forfeiture complaint or obtain an indictment with an allegation of forfeiture and take steps to retain custody under the governing criminal statute. 18 U.S.C. § 983(a)(3)(A)-(B).

The Government's failure to comply with these provisions gives rise to the questions now facing the Court. Here, after receiving notice from the FBI, Defendant timely filed his claim pursuant to § 983(a)(2) on May 4, 2017.[2] Within 90 days of the filing, the Government neither secured an indictment nor filed a complaint as required under § 983(a)(3), leading to dismissal of its action. *See In re Eight Thousand, Five Hundred Eight Dollars and Sixty-Three Cents ($8,508.63) from PNC Bank Account X1775 et al.*, No. 2:17-mc-00136, 2018 WL 3427635, at *1, *9 (E.D. Pa. July 16, 2018). I must now address whether, under 18 U.S.C. § 983, the dismissal due to the Government's failure to comply with § 983(a)(3) precludes the Government from pursuing any criminal forfeiture proceedings at all and, if not, whether the Government also has a right to maintain custody of property seized pursuant to the civil seizure warrant.

---

*See* 18 U.S.C. § 981(a). Section 981(d) incorporates the consistent provisions of 19 U.S.C. § 1602 *et seq.*, applying requirements such as the 19 U.S.C. § 1607(a) notice requirement to seizures under 18 U.S.C. § 981. Even where, as here, § 983(a)(1)(A)(i) applies, the Government can avoid the 60-day notice requirement if, prior to the expiration of the 60-day period, it files a civil judicial forfeiture action against the property and provides notice of that action, or it obtains a criminal indictment including an allegation that the property is subject to forfeiture and terminates the nonjudicial civil forfeiture proceeding to take steps to maintain custody of the property under the criminal forfeiture statute. 18 U.S.C. § 983(a)(1)(A)(ii)-(iii).

[2] Judge Pratter appropriately determined that the date of filing was the date on which the claim arrived in the FBI mailroom. *See In re Eight Thousand, Five Hundred Eight Dollars and Sixty-Three Cents ($8,508.63) from PNC Bank Account X1775 et al.*, No. 2:17-mc-00136, 2018 WL 3427635, at *1 (E.D. Pa. July 16, 2018).

In response to the Government's Motion, Defendant contends that the Government's failure to comply with § 983(a)(3), which resulted in dismissal of the civil forfeiture action, bars any further pursuit of forfeiture, including criminal forfeiture, on grounds of *res judicata*. The Defense relies on decisions from four circuit courts barring the Government from proceeding with a criminal forfeiture action after it brought and lost an action for civil forfeiture. I will address these decisions, but the Government is correct that, in the first instance, the issue is controlled by statute.[3]

The Government contends that the statute provides a way for it to overcome its failure to comply with the 90-day deadline. Under 18 U.S.C. § 983(a)(3)(B), the consequence of failing to file a complaint or secure an indictment is that "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and may not take any further action to effect the *civil* forfeiture of such property in connection with the underlying offense." *Id.* (emphasis added). The Government focuses upon this language to argue that any preclusive effect of a ruling in a civil forfeiture proceeding does not carry over to a criminal proceeding. The precise language of the statute, explicitly limiting the preclusive effect of dismissal to "further action to effect the civil forfeiture of such property" appears to preserve the Government's ability to pursue further a criminal forfeiture. *See id*.

Such a conclusion finds support in a review of CAFRA's legislative history. In the version of the bill that originally passed in the House, the provision that is now § 983(a)(3)(B) included only the term "forfeiture," without any distinction between civil and criminal forfeiture. H.R. 1658, 106th Cong. § 2 (1999). The Senate, however, inserted the term "civil" into this provision of the statute. H.R. 1658, 106th Cong. § 2 (2000) (as passed by Senate with substitute

---

[3] Courts "are bound when Congress, in the proper and prudent exercise of its authority, has spoken." *United States v. One 1950 Buick Sedan*, 231 F.2d 219, 223 (3d Cir. 1956).

amendment, March 27, 2000); 146 CONG. REC. 3648 (2000) (text of Senate substitute amendment); *id.* at 3657 (agreement to substitute amendment and passage of H.R. 1658 as amended). The House later concurred in the Senate amendment, 146 CONG. REC. 5235 (2000), and the narrowed version of the provision that is now § 983(a)(3)(B) became law. H.R. 1658, 106th Cong. § 2 (2000) (enacted). This background lends support to the argument that Congress intended, through § 983(a)(3)(B), to limit the preclusive effects of a failure to accomplish civil forfeiture under subparagraph (a)(3)(A).[4] I therefore read § 983(a)(3)(B) to preclude further efforts to effect civil but not criminal forfeiture.

That does not end the inquiry. I must now consider whether the Government may retain the seized funds. In seeking refuge from its mistake under § 983(a)(3)(B), the Government simply ignores the mandate of the first part of the same sentence on which it relies: "the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General." *See* 18 U.S.C. § 983(a)(3)(B). I find it significant that § 983(a)(3)(B) addresses **both** the civil and criminal remedies afforded to the Government: the filing of a civil complaint or the return of an indictment are each subject to the 90-day window. If that deadline is violated, "the Government shall promptly release the property" seized. *Id.*; *see United States v. Martin*, 662 F.3d 301, 304 (4th Cir. 2011). Thus, under the literal terms of the statute, the Government is obligated to return the funds.

The Government nonetheless seeks to retain the funds, urging me to issue an order under 21 U.S.C. § 853(e) to allow continued custody of the seized property. It argues that such an

---

[4] Even in the House version, which did not distinguish between civil and criminal forfeiture, the Hyde amendment, agreed to just before passage, attempted to clarify that the bill applied to "civil asset forfeiture and not criminal asset forfeiture." 145 CONG. REC. 14128 (1999) (statement of Rep. Hyde followed by agreement to amendment). This lends support to the view that the provision, even in the House version, sought only to preclude civil forfeiture efforts.

6

order is appropriate, notwithstanding 18 U.S.C. § 983(a)(3)(B)'s requirement of prompt release of the property, on the ground that, at this juncture in the case, criminal forfeiture laws like § 853(e) govern its right to retain the property. In support of this proposition, it cites § 983(a)(3)(C), which states: "*If criminal forfeiture is the **only** forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property shall be governed by the applicable criminal forfeiture statute."* [5] *Id.* (emphasis added). This provision allows criminal statutes like § 853(e) to govern the right to possession of the seized property only if the criminal forfeiture proceeding (initiated here with the indictment) was the only forfeiture proceeding commenced. To accept the Government's position would require an unnatural and strained reading of the statutory language, because it necessarily depends on the premise that Judge Pratter's dismissal of its civil forfeiture proceeding as time-barred somehow renders that action a nullity—no longer "commenced" because of its dismissal.

Such semantic sleight of hand carries little weight in its own right, and elsewhere in its submissions to the Court, the Government has explicitly conceded that "the government commenced a civil judicial forfeiture action." Gov't Mot. Maintain Custody at 4, ECF No. 13. But to the extent that there is any ambiguity as to what the term "commencement" means, the Third Circuit has definitively held that the "commencement of a forfeiture proceeding can mean only the point when the government first files a complaint for forfeiture in rem under 18 U.S.C. § 981(b)(2)." *United States v. One Piper Aztec F Deluxe Model Aircraft*, 321 F. 3d 355, 359 (3d Cir. 2003). I see no intellectually honest way to characterize the civil forfeiture proceeding as anything other than "commenced" and thus cannot conclude that criminal forfeiture was "the *only* forfeiture proceeding commenced by the Government." § 983(a)(3)(C). It follows that the

---

[5] Once again, this provision became law as a result of the Senate substitute amendment to the House version of the bill, which clarified the existence of separate criminal procedures.

Government's right to continued possession of the property is not controlled solely by the law of criminal forfeiture, and it therefore cannot invoke 21 U.S.C. § 853(e) as a means to maintain custody of the property seized pursuant to the civil seizure warrant. Under the literal terms of the statute, the Government's right remains controlled by the forfeiture provisions in 18 U.S.C. § 983, which require it to "promptly release" the seized property.

This reading of § 983(a)(3)(C) is reinforced by two cases noted in the Government's Motion. In support of its argument that 21 U.S.C. § 853(e) permits continued possession of the property by virtue of the fact that the Government already possesses it, the Government cites two cases involving the application of 18 U.S.C. § 983(a)(3)(C).[6] In both of those cases, however, the Government chose not to file a civil forfeiture complaint and instead pursued only criminal forfeiture. *See In re 2000 White Mercedes*, 220 F. Supp. 2d 1322, 1324 n.2 (M.D. Fla. 2001) ("[T]he United States explained that criminal forfeiture was the only forfeiture proceeding the government had commenced because no civil forfeiture complaint had been filed."); *United States v. Kramer*, 2006 WL 3545026, at *2 (E.D.N.Y. Dec. 8, 2006) (noting that, after the defendant filed his claim under § 983(a)(2), the Government chose to obtain a superseding indictment and "abandoned its civil forfeiture claim"). Because in both of those cases, "criminal forfeiture [was in fact] the only forfeiture proceeding commenced by the Government, the Government's right to continued possession of the property" was, under the plain language of §

---

[6] The Government cites two other cases in which courts applied 21 U.S.C. § 853(e) to allow the Government to retain possession of property seized pursuant to civil seizure warrants where the Government was in lawful possession of the property. Neither involved a situation where the Government suffered a dismissal. In *United States v. Young*, 2013 WL 1341396 (D. Utah April 3, 2013), the court declined to decide whether 18 U.S.C. § 983 applied and found instead that § 853(e) applied where the Government had filed a civil forfeiture action followed by a civil seizure warrant, rather than initiating a nonjudicial civil forfeiture proceeding under § 983, and then separately obtained an indictment. In *United States v. Standridge*, 2007 WL 2572207 (M.D. Fla. Sept. 5, 2007), § 983 did apply, but the court allowed the Government to maintain possession of funds seized pursuant to a civil seizure warrant where the Government had obtained an indictment prior to that seizure and, as required under § 983(a)(3)(B), and took steps to preserve its right to maintain custody under § 853(e)—the applicable criminal forfeiture statute—within 90 days of the defendant filing his claim under § 983(a)(2).

8

983(a)(3)(C), "governed by the applicable criminal forfeiture statute." *See* § 983(a)(3)(C); *In re 2000 White Mercedes*, 220 F. Supp. 2d at 1324; *Kramer*, 2006 WL 3545026 at *3. In contrast, as explained above, the Government here did commence a civil forfeiture proceeding when it filed the civil complaint, albeit in an untimely manner, so criminal forfeiture was not the only forfeiture proceeding commenced. Accordingly, this case does not fall within § 983(a)(3)(C), and, although criminal forfeiture is not altogether barred, the *continued possession of the property* seized pursuant to the civil seizure warrant remains controlled by § 983 rather than the criminal statutes.

In reaching this result, I note that courts must strive to reconcile seeming conflicts in statutes, *see Watt v. Alaska*, 451 U.S. 259, 266-67 (1981), and attempt to construe them in a way that gives meaning to all of their provisions. *Corley v. United States*, 556 U.S. 303, 314 (2009) ("[a] statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). It is true that CAFRA—§ 983 in particular—contemplates a dual track of civil and criminal forfeiture. This is evident in the language throughout the statute that distinguishes between civil and criminal proceedings. CAFRA also, however, imposes strict deadlines and consequences for missing those deadlines. To give effect to the language of both §§ 983(a)(3)(B) and (C), I conclude that the Government's error in this case precludes it, not from all pursuit of criminal forfeiture, but from maintaining possession of the seized property absent any legal authorization.

In that regard, I place weight on Congress' use of the specific phrase "continued possession of the property," *id.*, which is consistent with the principle that there are dual paths the Government can pursue to secure forfeiture but specific rules that govern how the

Government must proceed before conviction. Stated differently, § 983(a)(3)(B) limits the effect of failing to properly commence civil forfeiture, but, with respect to the *continued possession of the property* seized pursuant to a civil seizure warrant, § 983(a)(3)(C) only allows the criminal statutes to govern such continued possession where the Government never filed a civil forfeiture complaint.[7]

I turn now to Defendant's argument that *res judicata* bars any further action by the Government to effect forfeiture. As to civil forfeiture, I agree. The statute itself requires such a result, apart from any case law, but general principles of *res judicata* also support the conclusion that further action in pursuit of civil forfeiture is barred. *See CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). The Government's contention that Judge Pratter's dismissal does not represent a decision on the merits is flatly inconsistent with settled law, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995), and its argument that her dismissal could be viewed as "without prejudice" is frivolous under Federal Rule of Civil Procedure 41(b).

Regarding criminal forfeiture, as noted above, Congress explicitly limited the effect of a failure to accomplish civil forfeiture to further civil proceedings in § 983(a)(3)(B),[8] and CAFRA authorizes a dual track. In view of that, it is difficult to conclude that the Government is barred from proceeding to trial on criminal forfeiture. Three of the cases cited by Defendant—*United States v. Cunan*, 156 F.3d 110 (1st Cir. 1998), *United States v. Lots 43 Through 46*, 935 F.2d

---

[7] Although the statute is cumbersome, it is hardly the only instance where Congress has created a dual track system where different consequences follow depending on the course chosen. *See T.L. ex. rel. Latisha G. v. Pa. Leadership Charter Sch.*, 224 F. Supp. 3d 421, 425 (E.D. Pa. 2016) (discussing dual track mediation system under the IDEA).

[8] It is not unusual for a legislature to consider the preclusive effect of a proceeding it has authorized. For example, in 2003, Pennsylvania amended its Unemployment Compensation Act to limit the use of any order or judgment in another forum, 43 Pa. Stat. Ann. § 829. Twenty-nine other states have such a provision in their unemployment compensation statute. *See* William E. Hartsfield, *3 Investig. Emp. Conduct* App'x 127 (2018).

1134 (10th Cir. 1991), and *United States v. Maull*, 855 F.2d 514 (8th Cir. 1988)—predate CAFRA and as such have little precedential force here, where the Government only litigated civil forfeiture and Congress has specifically limited the consequences of a failure to prevail civilly. Only *United States v. Liquidators of European Fed. Credit Bank,* 630 F.3d 1139 (9th Cir. 2011) was decided after the enactment of CAFRA, and because CAFRA represents a deliberate choice by Congress to intervene in the area of forfeiture, *see generally* Cassella, *supra*, at 97-121, *Liquidators* is the case that most requires consideration.

The issue in *Liquidators* arose from unique circumstances involving a third party with interest in the seized property, and the Government, despite asserting on an earlier appeal that the third party, Liquidators, would have a full opportunity to challenge the forfeiture in an ancillary proceeding, later argued that third parties may not raise legal challenges to the forfeitability of property in ancillary proceedings. 630 F.3d at 1146-48. On appeal, the Ninth Circuit considered and agreed with Liquidators' argument that, under the doctrine of *res judicata*, dismissal of a civil forfeiture action on statute of limitations grounds barred subsequent criminal forfeiture. *Id.* at 1151-52. While the Ninth Circuit recognized the dual track nature of forfeiture laws, the court found that res judicata nonetheless applied in the circumstances of that case. *Id*. at 1152. It emphasized, however, that its decision was strongly influenced by what it viewed as an unfair shift in position by the Government, *id.* at 1149, and the fact that the defendant in the criminal case was not contesting the forfeiture, leaving the plaintiff, a third party, with no recourse. *Id.* at 1146-47. Because the Ninth Circuit went to substantial lengths to emphasize the uniqueness of the case before it, I am not persuaded that its ultimate holding supports the result Defendant asks me to reach.

In that regard, it is important to note that although Judge Pratter's decision is "on the merits" for purposes of *res judicata* (civil claim preclusion), she did not address the substantive issue of whether the Government can prove the funds seized were the result of criminal conduct. If she had, given the lower burden of proof in civil forfeiture, a different analysis would be required under principles of collateral estoppel (issue preclusion).

Though the opportunity to pursue criminal forfeiture is preserved, the Government's failure to abide by the 90-day deadline in § 983(a)(3) leaves it with no legal right to possess the funds seized pursuant to the civil seizure warrant, which it must return under § 983(a)(3)(B). This conclusion begs the question: what exactly did Congress intend when it both endorsed the Government's right to pursue a dual track but simultaneously limited the Government's options where it has commenced an untimely civil forfeiture action? More specifically, does the Government retain any ability to pursue seizure before trial, or is a conviction necessary? Those specific questions are not presently before me. But I am convinced that the Government's current Motion must be denied, and it is required to comply with the statute.

    /s/ Gerald Austin McHugh
United States District Judge